**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA ex rel. P.
WYMAN HARRISON; LAWRENCE T.
SHEPARD, Relators,
Plaintiffs-Appellants,

and

TAXPAYERS AGAINST FRAUD,                                    No. 95-2993
Movant,

v.

NATIONAL SEMICONDUCTOR
CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-91-3239-JFM)

Argued: December 4, 1996

Decided: January 7, 1997

Before WILKINSON, Chief Judge, and
NIEMEYER and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Frank Paul Bland, Jr., LAW OFFICE OF KIERON F.
QUINN, Towson, Maryland, for Appellants. Roger S. Goldman,

LATHAM & WATKINS, Washington, D.C., for Appellee. **ON BRIEF:** Bradley S. Weiss, LAW OFFICE OF BRADLEY SCOTT WEISS, Washington, D.C.; Sandra J. Strebel, David E. Pomper, SPIEGEL & MCDIARMID, Washington, D.C., for Appellants. Penelope A. Kilburn, LATHAM & WATKINS, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

P. Wyman Harrison and Lawrence T. Shepard filed this qui tam action on behalf of the United States against National Semiconductor Corporation, alleging that National Semiconductor committed fraud in performing its fixed-price contract to supply the National Security Agency with a state-of-the-art facility for the manufacture of microelectronic chips, in violation of the False Claims Act, 31 U.S.C. § 3729 et seq. The United States elected not to intervene in the action, and Harrison and Shepard, as relators, have pursued it. The district court entered summary judgment in favor of National Semiconductor, and we now affirm.

In 1988, the National Security Agency ("NSA") entered into a firm fixed-price contract with National Semiconductor for the installation of a semiconductor manufacturing facility at the NSA's Special Process Laboratory at Fort Meade, Maryland. The contract used a performance, as opposed to a design, criterion and required that National Semiconductor provide its expertise in supplying a state-of-the-art facility. Accordingly, the NSA made the contract deliberately "vague" so as to afford the supplier the flexibility necessary to meet the government's performance specifications. As was expected by the parties, during the contract's two-year performance period, National Semiconductor modified its initial proposal to upgrade the technology and

2

substitute components to reflect the rapidly evolving state-of-the-art. Performance of the contract was concluded in October 1990, and, according to the NSA, "the facility has performed, and continues to perform, much to the satisfaction of [the NSA]." Even now, more than six years after completion of the contract, the NSA has expressed no dissatisfaction with National Semiconductor's performance or its contractual modifications.

Harrison and Shepard were two employees of Argonne National Laboratories, a quality assurance subcontractor hired by the NSA to review the performance of the National Semiconductor contract. As qui tam relators, they filed suit alleging that National Semiconductor had failed to provide numerous items allegedly required by the contract and that National Semiconductor made numerous false statements to the NSA regarding its cost of performance. Harrison and Shepard allege that the NSA relied on National Semiconductor's false statements in deciding to accept contract modifications in lieu of items originally specified. After reviewing the relators' allegations, the government declined to intervene, concluding that the information that the relators "have presented was known by the Government and determined to be acceptable back in 1990. No new information has been presented that would warrant investigation and the continued expenditure of government funds." The district court then unsealed the complaints and, after disposing of several minor matters, granted National Semiconductor's motion for summary judgment.

On appeal, the relators have focused their challenge on alleged misstatements made in two letters submitted by National Semiconductor to the NSA in the final weeks of the contract. They contend that National Semiconductor misrepresented costs it incurred in providing certain upgraded equipment. According to the relators, the NSA's decision to accept National Semiconductor's performance of the contract was based on these false statements, and, but for the statements, the NSA would have required National Semiconductor to refund a portion of the contract price. Inherent in relators' argument that costs for change were misrepresented is the notion that National Semiconductor's original proposed costs constitute the benchmark against which the costs of later changes are to be measured. National Semiconductor, on the other hand, contends that the cost of any substituted performance must be measured against what the cost of actual

3

performance would have been and not what was originally estimated. Against this measure, National Semiconductor notes that the costs it reported to the NSA were indisputably accurate. Given the rapid evolution of the relevant technologies, the difference between the projected costs at the time of the proposal and the costs of actual purchase at the time of performance was, in some cases, very substantial.

The district court reviewed the record in detail and concluded that the underlying facts were undisputed and that National Semiconductor's representations were in fact accurate. Moreover, the court concluded that because the contract was performance-based, any statements of National Semiconductor's costs were not material. Finally, the court concluded that the case contains no fraud because the NSA was happy with what it received despite knowledge of the allegedly false claims at the time it accepted contract performance.

We have reviewed the record carefully, and having considered the extensive arguments of counsel, we agree with the district court's conclusions with respect to the issues before us. We also find it important to note that the NSA, the customer in this case, fully reviewed the relators' claims and concluded that it was satisfied with National Semiconductor's performance.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

4